***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer. The appealing parties have shown good grounds to reconsider the evidence and modify in part and affirm in part the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a pre-trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties as of October 7, 1992, the original date of diagnosis of Plaintiff's condition. The Plaintiff-employee's last date of employment was March 21, 1997.
3. The employer is self-insured with Kemper Risk Management Services as the servicing agent.
4. The parties agreed that the Plaintiff's average weekly wage could be determined based upon a Form 22. However, no Form 22 was submitted at the deputy commissioner hearing. Although defense counsel referenced such a form in correspondence of September 1, 2000, none was included. The parties acknowledge that the Plaintiff has been paid temporary total disability benefits in the amount of $330.35 per week since March 21, 1997.
5. The date of Plaintiff's diagnosis of her condition (bilateral carpal tunnel syndrome) was October 7, 1992. The Plaintiff's last date of employment was March 21, 1997.
6. The parties submitted the following exhibits:
 (a) Stipulated Exhibit 1 — 63 pages of medical records.
 (b) Stipulated Exhibit 2 — Transcript of Deposition of John Long, Ph.D.
 (c). Stipulated Exhibit 3 — Extensive Vocational Rehabilitation Reports from American Rehabilitation, Inc.
7. The following issues were set forth by the parties in the Pre-trial Agreement.
The Plaintiff contends that the issues to be decided by the Full Commission are:
 (a) Whether Plaintiff is permanently and totally disabled?
 (b) Whether continued vocational rehabilitation would be fruitless?
 (c) Whether or not the psychological problems Plaintiff is having, including depression, are related to her occupational disease?
 (d) What is Plaintiff's average weekly wage and should it be based on the last 52 weeks that she was employed with the Defendant-employer?
 (e) Whether the Defendants have waived the right to introduce any documents from Plaintiff's personnel file or any documents pertaining to her retirement by not responding to Plaintiff's request for production of documents served on the Defendants on September 9, 1998?
The Defendant contends that the issues to be decided by the Full Commission are:
 (a) Whether the Plaintiff has been non-compliant with vocational rehabilitation?
 (b) Whether the Plaintiff's benefits can be terminated on the basis of non-compliance?
8. Subsequent to the deputy commissioner hearing, defense counsel submitted two additional reports from Plaintiff's vocational counselor, Omega Autry, such reports being dated October 27, 2000 and November 27, 2000 and those reports are received as evidence.
9. The depositions of Thomas M. LaBreche, Ph.D. and Verne G. Schmickley, Ph.D. are a part of the evidentiary record in this case.
 ***********
Based upon the competent evidence of record, the Full Commission adopts with minor modifications the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was fifty-one (51) years of age at the time of the deputy commissioner hearing. Plaintiff is a high school graduate who lives with her mother in Rutherfordton, North Carolina. Plaintiff's father became sick and died in 1994.
2. Plaintiff began working as a telephone operator for Southern Bell (now BellSouth) on August 2, 1967 and worked for the company for about twenty-seven and one-half (27.5) years. The last few years Plaintiff worked as a directory assistance operator.
3. Plaintiff first developed problems with her hands prior to 1992. In October 1992, Plaintiff was seen by Dr. John Hamrick, Jr. at Cleveland Orthopedic Associates with complaints of problems mainly with her left arm. Plaintiff's follow-up electrodiagnostic studies were within normal limits and did not confirm carpal tunnel syndrome. Dr. Hamrick diagnosed Plaintiff with mild carpal tunnel syndrome and prescribed a wrist splint, which was helpful to relieve Plaintiff's symptoms. Dr. Hamrick did not recommend surgery for Plaintiff.
4. Plaintiff began seeing Dr. John Long, psychologist, on December 8, 1994. Plaintiff was written out of work completely by Dr. Long from January 31, 1995 to March 6, 1995 due to adjustment disorder with depressed mood which he believed was related to her stress at work. Dr. Long released Plaintiff to return to work four hours per day from March 6 to 12, 1995 and on a full-time basis on March 13, 1995. Meanwhile, Plaintiff visited Dr. Robert E. Dorlon, Jr. on February 24, 1995. Dr. Dorlon's medical note from this visit restricted Plaintiff to light duty work with a restriction of a maximum of four hours per day working on a keyboard. However, Plaintiff did not submit Dr. Dorlon's medical note describing her modified duty work restrictions to BellSouth until sometime between April 27, 1995 and May 11, 1995. Dr. Dorlon continued Plaintiff's modified duty in a medical note dated September 19, 1995, recommending that Plaintiff remain on modified duties for at least an additional six months. On July 10, 1996, Dr. Peter D. Miller recommended that Plaintiff continue light duty with the work restriction of four hours per day of typing or repetitive hand motion. Between May 11, 1995 and Plaintiff's subsequent termination on March 21, 1997, Plaintiff worked in several office assistant positions and directory assistance in BellSouth's Charlotte and Gastonia offices.
5. On March 21, 1997, Plaintiff was notified that she would be terminated, and she was given different options for her severance. At this time, Plaintiff was under permanent work restrictions consisting of four hours per day of typing or repetitive hand motion due to her carpal tunnel syndrome. BellSouth workers are unionized, and Plaintiff is a member of that union. The union contract specifies conditions under which employees such as Plaintiff may be laid off. Plaintiff's lay-off was pursuant to the provisions of that union contract and related to her carpal tunnel syndrome.
6. Plaintiff's termination from her employment occurred just about two and one-half years from the time when she would have had thirty (30) years of employment with BellSouth and would have qualified for full retirement benefits. Plaintiff's termination of her employment has been a source of frustration and anger for her.
7. Since Plaintiff's termination from her employment with BellSouth on March 21, 1997, she has been paid total disability benefits at the rate of $330.35 per week. Plaintiff has not returned to employment in any capacity since that time.
8. Defendants have provided Plaintiff with vocational assistance in an attempt to assist her in returning to gainful employment. Plaintiff's prior vocational counselor was Priscilla Styers with American Rehabilitation. Plaintiff perceived that Ms. Styers was abusive and pushy and did not have her best interests in mind. Plaintiff believed that Ms. Styers recommended jobs that were not appropriate for her, and Plaintiff would not pursue these jobs. Plaintiff responded negatively and was not compliant with the recommendations made by Ms. Styers; consequently, Plaintiff did not have a good relationship with her.
9. About two to three months prior to the deputy commissioner hearing, Priscilla Styers was removed from Plaintiff's case, and a new counselor, Omega Autry, was assigned to her. Plaintiff testified at the deputy commissioner hearing that she had met with Ms. Autry twice and had a more positive impression of her.
10. Plaintiff has not provided assistance to the vocational counselor, Ms. Autry, in terms of identifying her own interests. Plaintiff has refused to consider some suitable positions suggested by Ms. Autry on the grounds that she subjectively thinks they are unsuitable. Plaintiff also has rejected suggestions that she return to school for further vocational training. While Plaintiff minimally participates by attending meetings with Ms. Autry, the greater weight of the evidence including the substance of Ms. Autry's post-deputy commissioner hearing reports indicates that Plaintiff lacks motivation and has failed to fully cooperate with vocational rehabilitation efforts.
11. Near the close of the deputy commissioner hearing, the parties took a break and counsel held a discussion. The parties then advised the deputy commissioner that they could enter a "consent order" to provide that Plaintiff comply with vocational assistance. However, the parties were not able to reach agreement on the terms of that order and none was entered.
12. The evidence establishes that Plaintiff has continued to fail to comply with vocational assistance. Considering Plaintiff's age, education, physical and psychological conditions as well as the fact that she has yet to comply and provide a full vocational effort, vocational assistance is not futile. It would be reasonable and beneficial for Plaintiff to pursue gainful employment or retraining. Although Plaintiff has been diagnosed with carpal tunnel syndrome and has minimal permanent restrictions of four hours per day of typing or repetitive hand motion, her symptoms are mild and have not necessitated surgical intervention. Plaintiff does not suffer from debilitating chronic pain and is capable of work within the confines of her permanent restrictions.
13. In December 1994, Plaintiff was referred by the employee assistance program to John Long, Ph.D. Dr. Long saw Plaintiff for total of thirteen (13) sessions from December 8, 1994 through May 11, 1995. Dr. Long assessed Plaintiff with adjustment disorder with depressed mood, which he believed was related to her stress at work. In their first session on December 8, 1994, Plaintiff told him that she had problems meeting her production standards, in part due to her carpal tunnel syndrome and that she was worried she might lose her job.
14. After Plaintiff's last visit with Dr. Long on May 11, 1995, she did not return to see him until July 1998. At that time, Plaintiff talked about the loss of her job at BellSouth the prior year and said she felt she had lost her identity. At her July 1998 visit, Dr. Long assessed Plaintiff with major depression related to the loss of her job.
15. Plaintiff has also been treated by Thomas LaBreche, Ph.D., whose focus is neuropsychology. Dr. LaBreche first saw Plaintiff on March 30, 1999, and last saw her on January 26, 2000. Dr. LaBreche also determined that Plaintiff's depression is related to the loss of her employment with BellSouth, especially since this happened so close to her potential retirement with full benefits.
16. Both Dr. Long and Dr. LaBreche have testified that Plaintiff's depression may adversely affect her motivation to return to work. Dr. Long is somewhat discouraging as to any vocational efforts; however, Dr. LaBreche and Dr. Vernon Schmickley, a psychologist who conducted an independent medical examination of Plaintiff on October 6, 1998, are more optimistic about Plaintiff returning to work. Both Dr. LaBreche and Dr. Schmickley have encouraged Plaintiff to seek employment in a field in which she is interested and believe that a return to productive activity, either gainful employment or volunteer work, would be beneficial to Plaintiff.
17. Plaintiff's preexisting psychological problems were first aggravated while she was still employed by BellSouth. However, Plaintiff's depression and need for psychological treatment was not directly caused by her carpal tunnel syndrome; instead, the carpal tunnel syndrome was a more indirect causal factor in that it was related to her termination from employment. Though the termination was under a union contract, it was related to Plaintiff's permanent physical restrictions of four hours per day of typing or repetitive hand motion due to her carpal tunnel syndrome, not Plaintiff's psychological condition. Furthermore, Plaintiff has no psychological work restrictions.
18. Plaintiff has continued with conservative care for her carpal tunnel syndrome and has not had surgery. Plaintiff's carpal tunnel syndrome is not debilitating and does not cause sufficient chronic pain to lead to depression; therefore, Plaintiff's depression is not in itself disabling and is not a bar to her return to employment.
19. Plaintiff's average weekly wage should be based upon the last 52 weeks of her employment with Defendant preceding her termination on March 21, 1997, as the termination date reflects the start of her disability due to her work-related condition of carpal tunnel syndrome. Plaintiff's average weekly wage during this time was $525.41 resulting in a weekly compensation rate of $350.29.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Due, in part, to her admittedly compensable condition of bilateral carpal tunnel syndrome, and the resulting termination of her employment, Plaintiff has suffered an aggravation of preexisting psychological problems, including depression, for which she has required psychological treatment. Defendant is responsible for payment for such reasonably necessary treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25.
2. The evidence fails to establish that Plaintiff is permanently and totally disabled. Rather, Plaintiff would benefit from vocational counseling and rehabilitation. Defendant has offered such services, and Plaintiff has unjustifiably refused to fully cooperate. Therefore, Plaintiff should be ordered to cooperate with such services or risk suspension of ongoing benefits pursuant to N.C. Gen. Stat. § 97-25.
3. Plaintiff's average weekly should be based upon the 52 weeks preceding her termination on March 21, 1997, as the termination date reflects the start of her disability due to her work-related condition of carpal tunnel syndrome. N.C. Gen. Stat. §§ 97-2, 97-52.
4. By the greater weight of the competent evidence, Plaintiff has established that she is entitled to ongoing temporary total disability benefits beginning March 21, 1997 at the newly calculated weekly compensation rate of $350.29 per week. N.C.G.S. § 97-29.
5. By the greater weight of the competent evidence, Plaintiff has established that she is entitled to medical treatment for carpal tunnel syndrome and depression for so long as it tends to effect a cure, provide relief, or lessen the period of disability. N.C.G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendant shall pay all reasonably necessary medical and vocational expenses which tend to effect a cure, provide relief, or lessen the period of plaintiff's disability and are related to Plaintiff's depression and carpal tunnel syndrome.
2. Plaintiff is hereby Ordered to cooperate with the vocational rehabilitation and counseling provided by Defendant or be subject to suspension of benefits for failure to comply with the same. Defendant shall direct Plaintiff's rehabilitation counselor to confer with her treating psychiatrist so that he may recommend appropriate work restrictions and/or suitable jobs for Plaintiff to include in her job search. In the event that Plaintiff continues to refuse to cooperate with vocational rehabilitation and counseling, Defendant may file a motion for suspension of benefits.
3. Defendant shall pay Plaintiff the difference to which she is entitled between temporary total disability payments received since March 21, 1997 in the amount of $330.35 per week and plaintiff's revised compensation rate of $350.29 per week reflecting her correct average weekly wage. Said amount that has accrued should be paid directly to plaintiff in a lump sum subject to the attorney's fee approved below. In addition, Defendant shall continue to pay Plaintiff temporary total disability benefits in the amount of $350.29 per week until Plaintiff returns to work at the same or greater wages or until further order of the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent of the increase in compensation for temporary total disability payments since March 21, 1997 awarded to Plaintiff herein is approved for her counsel. A fee of twenty-five percent of ongoing benefits is also approved for Plaintiff's counsel. Twenty-five percent of the lump sum due to Plaintiff based upon calculation of the new compensation rate shall be paid to her counsel as a reasonable fee. Hereafter, every fourth check shall be paid directly to Plaintiff's counsel.
4. Defendant shall pay the costs, including the expert witness fees previously approved.
This the ___ day of January 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER